IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY TRENT LAPLANTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-517-G-BN |
| | § | |
| KARÜN EYEWEAR, INC. d/b/a | § | |
| KARÜN US, INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from Senior United States District Judge A. Joe Fish. *See* Dkt. No. 29.

As allowed by Judge Fish, Plaintiff Jeffrey Trent LaPlante filed an amended complaint on August 14, 2023. *See* Dkt. No. 30; *see also* Dkt. Nos. 18 & 28. And Defendant Karün Eyewear, Inc. answered. *See* Dkt. No. 31.

Karün then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* Dkt. No. 50. LaPlante responded. *See* Dkt. No. 53. And Karün replied. *See* Dkt. No. 55.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons set out below, the Court should grant the motion for judgment on the pleadings.

**Legal Standards**

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same

standard as a motion to dismiss under Rule 12(b)(6)." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 709 (5th Cir. 2023) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of

entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

So, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must

"plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation

controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And plaintiffs may not amend their allegations through a response to a motion to dismiss, because "a claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev.

Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Analysis

LaPlante alleges that, in March 2022, he was approached by a headhunter who informed him that Karün "was seeking someone to introduce [its] product to the U.S. market." Dkt. No. 30 at 2. By mid-April 2022, LaPlante had accepted Karün's offer to serve as its U.S. Sales Director. *See id.* at 2-5. The parties failed to execute a signed contract. *See id.* at 6. But this lawsuit turns on the terms of LaPlante's employment set out in an email exchange between the parties, namely a provision concerning a bonus to be paid LaPlante. *See id.* at 4-5; *see also id.* at 27-29 (Ex. E to the complaint).

Before the end of January 2023, Karün terminated LaPlante, offering him as severance one month's pay and a portion of the bonus (the amount he would have received on his first anniversary with the company). *See id.* at 8. LaPlante rejected the offer, asserting that he was owed his entire bonus. *See id.* And, through an amended complaint, he alleges claims of breach of contract, promissory estoppel, negligent misrepresentation, and fraudulent inducement. *See generally id.*

Karün moves for judgment on the pleadings on – that is, dismissal of – each claim, arguing, in sum, that the breach of contract claim fails, in part because it's based on an illusory promise; that LaPlante cannot allege promissory estoppel since his employment agreement covers the promise alleged and because he fails to allege reliance; that the claim of fraudulent inducement is not alleged where it does not

meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and depends on continued at-will employment; and that LaPlante fails to plausibly allege negligent misrepresentation. *See generally* Dkt. No. 50.

In response, LaPlante clarifies the scope of his claims. Staring with breach of contract, LaPlante explains,

> [a]s an initial matter, Defendant argues that its termination of Plaintiff's employment did not breach the contract because the agreement gave Defendant the right to terminate Plaintiff's employment at any time for any reason. However, Defendant misstates Plaintiff's breach of contract claim. Plaintiff does not contend that Defendant breached the employment agreement by terminating Plaintiff. Rather, Plaintiff asserts that Defendant breached its agreement with Plaintiff to fully pay his signing bonus in the event he was terminated before the four-year anniversary of his employment with Defendant…. Plaintiff alleges that the parties had a valid contract for the payment of his signing bonus. As consideration for this contract, Plaintiff agreed to leave his current employer in favor of Defendant and Defendant guaranteed payment of Plaintiff's signing bonus even if Plaintiff's employment was later terminated. Plaintiff performed under the contract when he left his current employer and joined Defendant. Defendant thereafter breached the contract when it terminated his employment but failed to pay out the entirety of his signing bonus as promised. As a result, Plaintiff was damaged. Therefore, the parties entered into a valid contract for the payment of Plaintiff's signing bonus that was not dependent on Plaintiff's continued employment and, thus, was not premised upon an illusory or unenforceable promise by Defendant.
> Defendant correctly points out that Plaintiff's interpretation of the signing bonus contract is based upon two clauses preceded by asterisks that modified the four-year payment payout structure of Plaintiff's signing bonus.

Dkt. No. 53 at 6-8.

Taking first the illusory promise argument, Karün replies that, because LaPlante's right to the long-term compensation payments was dependent on his continued employment, the promise was illusory and unenforceable under Texas law.

*See* Dkt. No. 55 at 2-3 (citing *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 400 (Tex. 2014) ("[I]f the employer or employee can avoid performance of a promise by exercising a right to terminate the at-will relationship, which each is perfectly free to do with or without reason at any time, the promise is illusory and cannot support an enforceable agreement.")); *see also* Dkt. No. 30 at 28 (setting out the first term of LaPlante's employment with Karün: that it "will be on an at-will basis, which means you and the company are free to terminate employment at any time, with or without cause or advance notice").

"Under Texas law, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Seybold v. Charter Commc'ns, Inc.*, No. 23-10104, 2023 WL 7381438, at *4 (5th Cir. Nov. 7, 2023) (per curiam) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

It therefore "follows that where there is no 'valid contract,' there can be no breach of contract claim," so the contract claim will fail as a matter of law. *Id.* (citing *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021)).

"A contract for at-will employment, standing alone," is not valid "because the promise of continued employment in an at-will contract is illusory – neither the employer or employee is bound in any way." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 584 (5th Cir. 2015) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009)); *see also Jehling v. A.H. Belo Corp.*, No.

3:11-cv-1258-B, 2013 WL 5803813, at *19 (N.D. Tex. Oct. 28, 2013) ("Generally, a promise in an at-will employment context is illusory when the consideration for that promise is dependent on a period of continued employment. This principle derives from the fact that in an at-will employment context, any additional period of employment is within the control of the employer." (citing *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644-645 (Tex. 1994), *abrogated on other grounds by Alex Sheshunoff Mgmt. Servs., LP, v. Johnson*, 209 S.W.3d 644 (Tex. 2006))).

But "[n]ot every promise made in the context of at-will employment … is unenforceable." *Jourdan v. Schenker Int'l, Inc.*, 71 F. App'x 308, 311 (5th Cir. 2003).

For example, "[t]hat an employment contract is terminable at-will …. does not mean that an employer can promise to pay an employee a certain wage and then unilaterally decide to pay the employee less for work she has already done." *Id.* (quoting *Paniagua v. City of Galveston*, 995 F.2d 1310, 1313 (5th Cir. 1993)).

Similarly,

> [a]lmost all unilateral contracts begin as illusory promises. Take, for instance, the classic textbook example of a unilateral contract: "I will pay you $50 if you paint my house." The offer to pay the individual to paint the house can be withdrawn at any point prior to performance. But once the individual accepts the offer by performing, the promise to pay the $50 becomes binding.

*Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 303 (Tex. 2009) (in which employees "allege[d] that AES made an offer to split five percent of the proceeds of the sale or merger of the company among any remaining original employees. Assuming that allegation is true, the seven remaining employees accepted this offer by remaining employed for the requested period of time. At that point, AES's promise became

binding. AES then breached its agreement with the employees when it refused to pay the employees their five percent share." (citation omitted)); *see also Markwardt v. United Rentals (N. Am.), Inc.*, No. SA-13-CA-627, 2014 WL 12540713, at *2 (W.D. Tex. Feb. 7, 2014) ("The fact that employment contracts in Texas are at-will and that 'employees are already being compensated in the form of their salaries in exchange for remaining employed also does not make the promise to pay [a] bonus any less enforceable.' This is because some bonuses 'are not pure gratuities but compensation for services rendered.' In effect, such bonuses are unilateral contracts that become enforceable when the employees give valuable consideration in the form of remaining with the company. In those cases, 'an employee fired without good cause prior to the time specified for payment of a bonus is entitled to recover a pro rata part of such bonus for the period he actually worked.'" (citations omitted)).

Because the Court's role at the pleadings stage is not to "resolve disputed facts or test the merits of a lawsuit" but instead to consider whether, "even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief," *Sewell*, 974 F.3d at 581, the undersigned finds that LaPlante has alleged the existence of a valid contract – not solely dependent on an illusory promise – insofar as he contends that, at the outset of his employment with Karün, he was promised a guaranteed signing bonus, *see, e.g.*, *Butler v. Heritage Life Ins. Co.*, No. 4:13-CV-199, 2014 WL 4058974, at *9 (E.D. Tex. Aug. 14, 2014) ("However, Plaintiff has also pleaded facts that suggest that at the outset of the employment relationship, he accepted an offer that he would work for salary plus bonus and that the work he performed during the

year was induced by Defendant's promise to pay a nondiscretionary, mandatory bonus. Thus, Plaintiff has pleaded sufficient facts to state a claim in support of his breach of contract claim." (citations omitted)).

So the Court must now turn to Paragraph 9 of Exhibit E to the amended complaint, to address whether the clauses at issue were breached:

> 9. Long Term compensation plan, based on enduring loyalty to the company through a vested signing bonus:
> 1st year anniversary: $10,000
> 2nd year anniversary: $20,000
> 3rd year anniversary: $30,000
> 4th year anniversary: $40,000
> Total signing bonus: $100,000
> * If new owners maintain the team and the Sales Director continues working with Karün, the conditions of the signing bonus will be held.
> * If the owners decided to make changes in our team, we paid the difference to complete the total of the signing bonus.

Dkt. No. 30 at 28 (emphasis omitted).

Concerning these clauses, LaPlante first argues that the contract is unambiguous:

> The first clause presumes a scenario in which new ownership takes over the company and does not terminate Plaintiff's employment with the company. Under these circumstances, Defendant would be permitted to maintain the four-year payout structure for Plaintiff's signing bonus. However, the clear language of the second clause provides that "if the owners (any owners, new or current) decided to make changes to the team," Defendant would pay the difference of any amounts owed to Plaintiff under the signing bonus.

Dkt. No. 53 at 8.

LaPlante therefore urges the Court to "construe the language used in the contract 'by determining how the 'reasonable man' would have used and understood such language, considering the circumstances surrounding its negotiation and

- 11 -

keeping in mind the purposes intended to be accomplished by the parties when entering into the contract." *Id.* at 8-9 (citation omitted).

> Here, the negotiations between the parties establish that Plaintiff sought a signing bonus as an incentive to lure him away from his current employer. Based on his discussions with Mr. Moscatelli and Camila Echegary and the final language of the employment agreement, it was reasonable for Plaintiff to conclude that the entire signing bonus would be paid in the event his employment was terminated by Defendant.
>
> Moreover, under Texas law, "a writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties." Defendant drafted the contract at issue in this case. Had Defendant wanted to make it absolutely clear that Plaintiff's signing bonus would only be paid out in its entirety if Plaintiff was terminated by "new owners" it could have drafted the contract to clearly read that way.

*Id.* at 9 (citations omitted).

Concerning how to interpret the clauses, Karün replies that "[t]he asterisked clauses must be read together and in context," and so "the term 'owners' in the second clause is a reference to the 'new owners' in the preceding asterisked clause." *Id.* at 3-4 ("In short, even assuming *arguendo* that the long-term compensation provision was not illusory, it nevertheless cannot support Plaintiff's breach-of-contract claim because he was not entitled to receive the payments under that provision.").

> Determining whether a contractual ambiguity exists is a question of law which courts can decide at the motion to dismiss stage. In this case, Texas law controls. And so this Court looks to the laws of Texas to determine whether the contract is ambiguous. Under Texas law, the "prime directive" in interpreting a written contract "is to ascertain the parties' intent as expressed in the instrument." Courts may look to parol evidence only "where a contract is first determined to be ambiguous." A contract is ambiguous only when "the contract language is susceptible to two or more reasonable interpretations." When a contract is not ambiguous, "the court will construe the contract as a matter of law."

*Division One Foods, Inc. v. Pizza Inn, Inc.*, No. 3:20-cv-2065-X, 2021 WL 3172176, at

*1 (N.D. Tex. July 27, 2021) (footnotes omitted).

> Generally, Texas courts are reluctant to examine the parties' subjective understandings as to the meaning of certain language without first finding the language ambiguous. *See, e.g.*, *Sun Oil (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). A trial court may conclude that a contract is ambiguous as a matter of law even if neither party alleges. *Sage Street Assocs. v. Northdale Const. Co.*, 863 S.W.2d 438, 445 (Tex. 1993); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A mere disagreement on the meaning of a provision by the parties does not render it ambiguous. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015). A contract is not ambiguous if it can be given a certain or definite legal meaning or interpretation but is ambiguous if it is reasonably susceptible to more than one meaning. *Plains Expl. &Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).
> The Court "may consider the facts and circumstances surrounding a contract, including 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction.'" *Kachina*, 471 S.W.3d at 450 (quoting *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014)). While such evidence may be considered to inform on the text and render it capable of only one meaning, extrinsic evidence may only be considered to interpret an ambiguous writing, not to create ambiguity. *Id.*

*Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 680-81 (N.D. Tex. 2021) (footnote omitted; citation modified); *see also URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 757-58 (Tex. 2018) ("[L]anguage is nuanced, and meaning is often context driven. Contract language is thus construed in its lexical environment, which may include objectively determinable facts and circumstances that contextualize the parties' transaction. Surrounding facts and circumstances can inform the meaning of language but cannot be used to augment, alter, or contradict the terms of an unambiguous contract." (footnotes omitted)).

Considering the two clauses at issue against these standards and "the facts and circumstances that contextualize the parties' transaction," *URI*, 543 S.W.3d at

- 13 -

758, the contract is not ambiguous and has one reasonable interpretation: The use of "owners" in the second clause has the same meaning as "new owners" in the first clause.

And, where LaPlante advances an interpretation of the second clause untethered to the preceding clause (or some other clause in the agreement) and fails to plausibly explain why, considering the entire writing, that clause stands alone, Karün's take is more consistent with the principles that "[r]easonable interpretations of an agreement are preferred to those that are unreasonable" and that, "in determining the meaning of a provision, courts must examine the entire writing as a whole, giving these provisions meaning in context of the contract." *Pickle*, 534 F. Supp. 3d at 680 (citing *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985); *Coker*, 650 S.W.2d at 393).

Karün's interpretation is, moreover, consistent with LaPlante's own allegations. That is, attached to LaPlante's amended complaint – and therefore made part of that pleading for all purposes, such that its content controls where it contradicts an allegation in the pleading – is the parties' email exchange that led to the inclusion of the two clauses. *See* Dkt. No. 30 at 19-24 (Ex. C to the complaint); *see also, e.g.*, *Merisier v. Johnson Cnty., Tex.*, No. 3:19-cv-2911-X-BN, 2021 WL 681443, at *11-*12 (N.D. Tex. Jan. 14, 2021) (discussing FED. R. CIV. P. 10(c); *Gill*, 941 F.3d at 511-12, 514-15), *rec. accepted*, 2021 WL 674123 (N.D. Tex. Feb. 22, 2021).

LaPlante's well-pleaded allegations – "the facts and circumstances that contextualize the parties' transaction," *URI*, 543 S.W.3d at 758, that the Court must

accept as true for purposes of the Rule 12(c) motion – reflect that the concern that prompted both clauses was – in LaPlante's words – to protect his bonus structure "[i]n the event of a Corporate 'Buy Out' or SALE of Karün as an entity prior to year 4; FULL and REMAINING PORTION of signing bonus will become immediately 100% vested and due." Dkt. No. 30 at 22.

And the undersigned considers this statement primarily as an allegation, to judge the plausibility of the claimed breach of contract, not as parol evidence (which would not be applicable since the parties' contract is not ambiguous).

For these reasons, LaPlante has not plausibly alleged that Karün breached. He has not plausibly alleged that there was an agreement that he would receive the entire bonus in the event his employment was terminated, regardless of his tenure. Nor has LaPlante plausibly alleged even that he was owed his first installment on that bonus, where he did not reach his first anniversary. So the Court should grant Karün judgment on the pleadings as to the breach of contract claim.

As to the remaining claims, LaPlante's response to the Rule 12(c) motions does not address promissory estoppel at all, but he does respond that Karün's "representatives induced him to leave his previous job by providing an incomplete and inaccurate description of Defendant's business systems and practices and inventory levels," which is his "theory" of recovery "for fraudulent inducement and negligent misrepresentation." Dkt. No. 53 at 5.

The undersigned first finds that, for the reasons set out above, explaining the existence of a valid contract, LaPlante has not plausibly alleged promissory estoppel,

which "presumes no contract exists," so that, "[i]f ... a valid contract between the parties covers the alleged promise, the plaintiff cannot recover for the promise under promissory estoppel." *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (quoting *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002); *Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App. – El Paso 2007, pet. denied)). The Court should therefore dismiss this claim.

And, where "fraud and negligent misrepresentation claims are based on the same set of alleged facts," as is the case here, "the particularity required by" Rule 9(b) applies to both claims. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997))); *see also Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." (citations omitted)).

"Rule 9(b), in turn, demands 'the who, what, when, and where [to] be laid out *before* access to the discovery process is granted.' [So LaPlante] must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Elson*, 56 F.4th at 1009 (emphasis in original; quoting *Williams*, 112 F.3d at 178, 177).

And, because this required particularity is missing from the complaint, *see* Dkt.

- 16 -

No. 30 at 2-11, the Court should grant Karün judgment on the pleadings as to the remaining claims.

## Recommendation

The Court should grant Defendant Karün Eyewear, Inc.'s motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) [Dkt. No. 50].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 29, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE